## MISSISSIPPI MILLS v. E. BAUMAN ET AL.

### No. 826.

**1. Conversion—Creditor's Interest Not Title—Evidence—Presumption.**

Plaintiff, holding a judgment for $2,800 against B., an insolvent, levied upon a stock of goods valued at $90,000, which had been sold by the receiver of B. to I. & Co., and purchased under its execution sale, and I. & Co., refusing to admit plaintiff to possession of the goods, or an interest in the firm, plaintiff sued for conversion, making B. a defendant, alleging that he was in reality a partner in the firm. Held, that although the evidence might show that B. advanced the money to said firm to purchase the goods from the receiver, yet this would constitute him merely a firm creditor, and it could not be presumed that he had so advanced the money with the understanding that he was to have an interest in the goods; and without such interest, plaintiff acquired by its levy and purchase no title upon which an action for conversion could be maintained.

**2. Same—Extent of Partnership Interest Must Be Shown.**

Conceding that the evidence warranted the finding that B. was a member of the firm of I. & Co., still, there could be no finding for plaintiff, in the absence of proof as to the extent of his interest in the partnership.

**3. Same—Evidence Insufficient.**

B., although duly served with citation, failed to appear, and also failed to answer interrogatories propounded to him by the plaintiff. Held, that plaintiff was not thereby entitled to verdict and judgment in the case, or to a new trial, where no judgment by default had been entered, and no request made to have the jury ascertain the amount of plaintiff's damage.

**4. Practice on Appeal—Assignment of Error—Brief.**

The appelate court will ignore an assignment of error taken to the trial court's

refusal to admit in evidence a deposition of a witness to contradict another deposition of the same witness, where the brief fails to point out the differences in the testimony.

APPEAL from Dallas. Tried below before Hon. R. E. BURKE.

*M. L. Dye* and *H. G. Robertson,* for appellant.

*Crawford & Crawford,* for appellees.

JAMES, CHIEF JUSTICE.—E. Bauman, a merchant, on December 7, 1891, executed a deed of trust on his property subject to execution, consisting of several stores, to E. M. Reardon and J. B. Simpson as trustees, to secure certain of his creditors. Some of these creditors being dicsatisfied with the trustees, applied for a receivership in reference to the property, which was granted, and B. Blankenship was appointed receiver. Pursuant to the orders of the proper court, the receiver sold certain of the merchandise to Crawford & Crawford, who shortly afterwards sold the same to M. Iralson & Co. This was about the end of December, 1891.

The Mississippi Mills was one of the creditors of Bauman not preferred by the deed of trust, and, after the execution of the same, brought its suit in the Federal Court and attached property in the trustees' hands, which attachment, however, was abandoned and released. Appellant obtained a judgment in the Federal Court against Bauman for about $2800, and after the sale by Crawford & Crawford to Iralson & Co., and when the goods were in the latter's hands, caused an execution to be levied on the same, and a sale made whereby they obtained whatever title E. Bauman may have owned therein. This occurred April 5, 1892. The persons in possession of the goods refused to admit the appellant to possession of the goods, or to an interest in the firm of Iralson & Co., denying that appellant acquired any title by the sale, whereupon this suit was brought for damages, based upon the title in the goods claimed through said sale, against Crawford & Crawford, E. Bauman, J. Bauman, M. Iralson, and B. Dienstag, the four last named alleged to compose the firm of Iralson & Co., for conversion of appellant's said interest in the goods, alleged to have been of the value of $90,000.

There was positive testimony that Crawford & Crawford were the purchasers of the goods from the receiver for $67,500, paying for them with money which they borrowed from several banks on their personal credit; and that they resold the same immediately to M. Iralson, J. Bauman and B. Dienstag, at an advance, taking the latter's notes payable in installments which extended over a year, and that said notes were paid by the makers out of the revenues of the business; also that the goods were worth about double what they agreed to pay Crawford & Crawford for the same.

The facts upon which appellant relied to show that E. Bauman owned or had an interest in the property held by M. Iralson & Co. at

the time of the marshal's sale, were circumstantial in their character, and are set forth by appellant in its brief in the statement under the thirty-fifth assignment, which is here copied literally:

"M. Iralson, B. Dienstag and Joe Bauman were employed by Simpson & Reardan while making the inventories, Iralson being in charge of the stock. E. Bauman and his attorney, M. L. Crawford, went to see the receiver about purchasing part of the goods. Bauman stated in the conversation that he wanted to get the stock 'for the children,' and M. L. Crawford and E. Bauman submitted some offers made by M. Iralson & Co., which was guaranteed by Crawford & Crawford.

"E. Bauman remained in possession of the goods after they were turned over to M. Iralson & Co., and had charge of the business and directed the carpenters in making changes, and said that his 'attorney told him that he had a right to come around there and direct matters and help the boys.'

"The gross profits on such goods as were bought by M. Iralson in the year 1892 was about 25 per cent. Crawford & Crawford borrowed $67,500 from the banks, and executed their notes to the banks for that sum, and paid the receiver the $67,500 for them, and turned over or sold to Bauman's 'children' for $77,500, on a credit, and neither took nor asked for security, and tacked the notes received to their notes as collateral security. They compromised debts of Bauman, for which they executed their notes for $9000 to Jaffrey & Co. and Ablowich & Co., and took the notes of M. Iralson & Co. for corresponding amounts. They paid $1520.93 discounts to banks for M. Iralson & Co., and took their notes for same amount Crawford & Crawford executed their notes (as indicated) for more than $77,000, and as defendants say, without receiving or asking for security from said children. Said Iralson, Dienstag and Joe Bauman had no property except their wages; two of them were minors, and all of them relatives of E. Bauman.

"Said Crawford & Crawford knew that Joe Bauman, M. Iralson and B. Dienstag were relatives of E. Bauman and members of his family, and were in his employment, and without property or means of support, except their wages, and had only a casual acquaintance with the said members of Bauman's family. Neither of the partners in the firm of M. Iralson & Co., namely Joe Bauman, B. Dienstag and M. Iralson, had any money to put into the business, and bought the stock of goods from Crawford & Crawford on a credit.

"E. Bauman was consulted and talked with, and was present when the sale was made by the Crawfords to M. Iralson.

"Joe Bauman and M. Iralson were under twenty-one years of age, and had their disabilities removed in order to become the purchasers of said goods, which was done December, 1891. Crawford & Crawford attended to getting their disabilities removed. Neither of said hirelings had any money, but expected to go into business with the assistance of Crawford & Crawford.

"Said hirelings told Crawford & Crawford that they did not have

any money, and that they proposed to pay them, the Crawfords, the purchase price out of the proceeds of the sale.

"The said Crawfords knew that said hirelings had nothing, and did not ask any security for the purchase money. The Crawfords bought from Blankenship without a bill of sale, and gave a written bill of sale to said hirelings. The goods were to be paid for in the course of one year in installments. Said hirelings gave their notes to Crawford &. Crawford for the purchase money of $77,500, and also for $9000, making in all about $88,000, for which the Crawfords trusted the said hirelings, without asking for or receiving security, except the reputation and character M. Iralson had made from the way he ran E. Bauman's business.

"That said hirelings swore that out of the proceeds of the sale of said $67,500 worth of goods, they, in the year 1892, the first year of their business, paid the said notes of Crawford & Crawford to the banks. for $67,500, with interest, also the ten thousand dollars with interest,. 'profit' to .or for 'endorsement of' Crawford & Crawford, also the said $1520.92 to Crawford & Crawford, discount, also said $9000, notes. of said Crawford & Crawford on said compromise of Bauman's debts,. also said $10,000 to the City National Bank, $25,000 clerk hire, rent and expenses for 1892, also $100,000 for goods bought in 1892. The uncontradicted proof showing that said hirelings paid out in the year 1892 the sum of $223,000 in cash and had $100,000 worth of goods left on hand at the end of the year. Said hirelings swear that they paid said $223,000 out of the proceeds of the sale of said $67,500 worth of goods in the year 1892, and at the end of said year had $100,000 worth of goods left on hand. They swore, and all the merchants swore, that. the gross profits on said $67,500 of goods is only twenty or twenty-five per cent. That said profits on said goods was all the means that said. hirelings had.

"The uncontradicted testimony of the expert merchants and other· witnesses in this case, including the defendants themselves, was that. such credit as is claimed to have been given under the circumstances. of this case to said hirelings, and such profits as are claimed to have. been made by them, were not only out of the usual course of business,. but never heard of before. Said hirelings paying out of said gross profits, as they swear, about $30,000 in the first month of their business, in February, 1892, the dullest month of all the year, and so on, or nearly that amount, every month in 1892."

Our conclusions of fact are as follows:

1.   That Crawford & Crawford were the purchasers of the goods. from the receiver, and M. Iralson, J. Bauman and D. Dienstag were the purchasers of the same from Crawford & Crawford.

2.   That the evidence failed to show that E. Bauman owned the goods at the time of the marshal's levy, or had any interest thereon;. and the most that can be claimed for the testimony is the possible in-- ference that E. Bauman advanced moneys to enable M. Iralson, J. Bau-

man and B. Dienstag to pay off the notes they had given for the goods.

3. The record does not show that E. Bauman had exclusive possession of the goods and business after the sale by Crawford & Crawford, as the facts given by appellant and above copied would indicate. The evidence is that he was there in company with the purchasers from Crawford & Crawford.

*Conclusions of Law.*—The suit was for a conversion of plaintiff's property, and if the testimony is not sufficient to show a title in plaintiff to the property, its case fails. The receiver's sale vested the title to the goods in question in the purchaser, free from any claim growing out of E. Bauman's indebtedness. Tarver v. Hammond, 31 S. W. Rep., 841.

We need not look to the testimony further than to see whether or not the circumstances developed had a reasonable tendency to show that E. Bauman was the real purchaser from Crawford & Crawford, or if not such purchaser, whether or not he acquired the title to the goods, or an interest in the goods, under those who in fact purchased.

It may fairly be contended that the facts showed an improbability that the business conducted by M. Iralson & Co. was such as to enable them to pay during the year the sums which they say they paid out of the business. Conceding, then, that E. Bauman was shown to have had the means to do so, it might have been inferred from this and the other circumstances that he advanced money toward these expenditures, or to pay them. This, if such were the conclusion arrived at, would show him to be a creditor of M. Iralson & Co.; for this would be the legal relation that would be consequent upon his advancing money for them. To go further than this, and make the further inference that E. Bauman paid the notes or paid moneys upon the notes to Crawford & Crawford through an understanding that he was to own or have an interest in the goods, would be to base one presumption upon another, which it has been held is not allowed. Baldwin v. Goldfrank, 31 S. W. Rep., 1067; Lawson, Presumptive Ev., 569. In reality, such further inference would be nothing more than a conjecture or assumption. That E. Bauman was a creditor of M. Iralson & Co. would not show title in him or appellant to the goods, which is essential to a recovery for a conversion thereof.

The petition does not assert that E. Bauman, at the time of the marshal's sale, was the owner of the goods, but alleges that he was a partner in the firm of J. Iralson & Co. and had a nine-tenths interest in the firm, and admitting a one-tenth interest in the others. Certainly, upon this pleading, the jury could not have found for plaintiff except with reference to some fractional interest of E. Bauman in the firm. Conceding that the evidence would have warranted the finding that E. Bauman was a partner in the firm, there was nothing in the evidence introduced or offered which would enable the jury to ascertain the extent or value of his interest, or the extent of appellant's damage. Upon

the testimony given, and that offered, the verdict was the only one that would have been proper.

In view of the above, it is not necessary to notice the assignments which complain of errors in respect to the charges, or those going to the manner of conducting the trial, or those which complain of the dismissal of Crawford & Crawford from the case. If appellant failed to show a title to the goods, there was no conversion of his property, and none of the defendants could be liable.

None of the excluded testimony of Iralson, as shown by the assignments 4, 5, 14, 19, 20, 26, 27, and 28, would, if admitted, have added any fact or circumstance sufficient, with the other testimony, to authorize a finding that Bauman had an interest in the property.

The sixth assignment complains of the court's refusal to allow a certain deposition of B. Dienstag to be read to contradict another deposition of his which had been read; and in refusing to allow a deposition of M. Iralson to be read to contradict his testimony. This assignment we cannot consider, because the appellant's brief does not point out the differences in the testimony, so that we can judge of whether there were contradictory statements, and if so, whether they were material; and we cannot examine a large portion of the record and make comparisons to ascertain what should be clearly called to our attention.

The thirtieth assignment is without merit.

It is further claimed that the verdict is against the law and evidence in that E. Bauman was duly served with citation and failed to appear, and that plaintiff was entitled to a judgment by default against him; and also for the reason that he had confessed plaintiff's right to a judgment against him by not answering, and thereby confessing the interrogatories propounded to him. Assuming all this to be so, it was nevertheless necessary for the jury to ascertain the amount of damages. This is not taken as confessed by a default, and there was no question propounded to him as to the extent of the damage. No judgment by default was taken, and no request was made to have the jury find upon this particular matter, and for these reasons, if for no others, the court did not err in overruling this ground for new trial.

We arrive at this result without considering the merits of the motion to strike out appellant's bill of exceptions from No. 1 to 20, and with reference to all this as presented in appellant's brief.

*Affirmed.*

The judgment is affirmed.

Delivered January 29, 1896.

Writ of error refused.